**No. 25-1068**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NAVIGATORS INS. CO., ET AL.,

*Plaintiffs – Appellants,*

v.

UNDER ARMOUR, INC.

*Defendant – Appellee.*

On Appeal from the United States District Court
for the District of Maryland
No. 1:22-cv-02481-RDB
Hon. Richard D. Bennett

## PUBLIC REPLY BRIEF OF APPELLANTS (REDACTED)

Richard A. Simpson
Margaret T. Karchmer
Anna J. Schaffner
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
*Counsel for Plaintiff-Appellant
Continental Casualty Company*

*Additional counsel for Plaintiffs-
Appellants listed on next page*

Michael P. O'Day
Alexa Pauline Ain
DLA PIPER LLP (US)
650 S. Exeter Street
Suite 1100
Baltimore, MD 21202
(410) 580-3000
*Counsel for Plaintiff-Appellant*
*National Union Fire Insurance*
*Company of Pittsburgh, PA*

John J. Murphy, Esq.
WALKER, MURPHY & NELSON,
LLP
9210 Corporate Boulevard
Suite 320
Rockville, MD 20850
(301) 519-9150
*Counsel for Plaintiff-Appellant*
*Navigators Insurance Company*

Gabriela Richeimer
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue NW
Suite 200
Washington, DC 20037
(202) 599-1092
*Counsel for Plaintiff-Appellant XL*
*Specialty Insurance Company*

Leslie S. Ahari
Stacey E. Rufe
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue NW
Suite 200
Washington, DC 20037
(202) 599-1013
*Counsel for Plaintiff-Appellant QBE*
*Insurance Company*

John R. Solter, Jr.
AZRAEL, FRANZ, SCHWAB,
LIPOWITZ & SOLTER, LLC
101 East Chesapeake Avenue
Fifth Floor
Baltimore, MD 21286
(410) 821-6800

John J. Murphy, Esq.
WALKER, MURPHY & NELSON,
LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
(301) 519-9150

Paul T. Curley
Briana Semenza
KAUFMAN BORGEEST & RYAN
LLP
200 Summit Lake Drive
Valhalla, NY 10595
(914) 449-1019
*Counsel for Plaintiff-Appellant Swiss*
*Re Corporate Solutions America*
*Insurance Corporation*

Geoffrey W. Heineman, Esq.
John J. Iacobucci Jr., Esq.
ROPERS MAJESKI PC
800 Third Avenue, 29th Floor
New York, New York 10022
(212) 668-5927
*Counsel for Plaintiff-Appellant*
*Argonaut Insurance Company*

Travis Wall
Gordon Smith
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
(415) 323-4487
*Counsel for Plaintiff-Appellant Allied
World National Assurance Company*

John R. Solter, Jr.
AZRAEL, FRANZ, SCHWAB,
LIPOWITZ & SOLTER, LLC
101 East Chesapeake Avenue
Fifth Floor
Baltimore, MD 21286
(410) 821-6800

Darius N. Kandawalla
Jordan W. Ziolkowski
BAILEY CAVALIERI LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215
(614) 229-3257
*Counsel for Plaintiff-Appellant
Freedom Specialty Insurance Company*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................1

I.    The Securities Class Action, in its entirety, is a "Claim" first made before the 17-18 Policy Period..................................................................................1

II.   The Underlying Matters are deemed a single Claim first made before the 17-18 Policy Period. ...............................................................................5

    A.   Under Armour's contention that the Endorsement 4 Single Claims Provision replaced the Base Form Single Claims Provision is wrong and a red herring. .......6

    B.   The Underlying Matters all arise out of the same alleged fraudulent scheme and are, therefore, deemed a single Claim first made before the 17-18 Policy Period............................................................................................11

III.  The Specific Matter Exclusion and Prior Notices Exclusion each separately bars coverage for the Underlying Matters. ............................................18

IV.   Under Armour's alternative argument under the 19-21 Policies is meritless. ..20

    A.   The SIE does not deem the Government Investigations a Claim made during the 17-18 Policy Period. ....................................................................20

    B.   Claims that the SIE deems made in the 17-18 Policy Period remain subject to all 17-18 Primary Policy terms...................................................21

CONCLUSION ...........................................................................................27

CERTIFICATE OF COMPLIANCE ...................................................................30

CERTIFICATE OF SERVICE ..........................................................................31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Am. Ins. Co. v. Ascend One Corp.*,
570 F. Supp. 2d 789 (D. Md. 2008) ...................................................................15

*ADI Worldlink, LLC v. RSUI Indem. Co.*,
No. 4:16-cv-665-ALM-CAN, 2017 WL 6403047 (E.D. Tex. Aug.
16, 2017) .............................................................................................................10

*Allstate Ins. Co. v. Stinebaugh*,
824 A.2d 87 (Md. 2003) .....................................................................................26

*AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*,
C.A. No. 21-374-JLH, 2022 WL 980299 (D. Del. Mar. 31, 2022) ...................16

*Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*,
189 F.3d 208 (2d Cir. 1999) .................................................................................2

*AT&T Corp. v. Faraday Cap. Ltd.*,
918 A.2d 1104 (Del. 2007) ...................................................................................2

*Beale v. American National Lawyers Insurance Reciprocal*,
843 A.2d 78 (Md. 2004) ........................................................................................2

*Benefytt Techs. v. Cap. Spec. Ins. Corp.*,
No. N21C-02-143 PRW CCLD, 2025 WL 84701 (Del. Super. Ct.
Jan. 6, 2025) .......................................................................................................15

*Blissful Enters., Inc. v. Cincinnati Ins. Co.*,
421 F. Supp. 3d 193 (D. Md. 2019) ...................................................................22

*Brown v. Emery Federal Credit Union*,
No. DLB-21-591, 2022 WL 991387 (D. Md. Mar. 31, 2022) ..............................9

*Bryan Bros. Inc. v. Cont'l Cas. Co.*,
704 F. Supp. 2d 537 (E.D. Va. 2010), *aff'd*, 660 F.3d 827 (4th Cir.
2011) ...................................................................................................................17

ii

*Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co.*,
  95 F. Supp. 2d 180 (S.D.N.Y. 2000) ........................................................2

*Cont'l Cas. Co. v. AWP U.S., Inc.*,
  No. 3:19cv661, 2021 WL 1225968 (E.D. Va. Mar. 31, 2021).....................10, 15

*Cont'l Cas. Co. v. Jones*,
  No. 3:09-cv-1004-JFA, 2011 WL 3880963 (D.S.C. Sept. 2, 2011),
  *amended on other grounds on reconsideration as stated in* 2012
  WL 530002 (D.S.C. Feb. 17, 2012)..................................................17

*Cordish Companies, Inc. v. Affiliated FM Ins. Co.*,
  573 F. Supp. 3d 977 (D. Md. 2021)................................................22

*In re Cypress Semiconductor Sec. Litig.*,
  891 F. Supp. 1369 (N.D. Cal. 1995)................................................13

*Direct Gen. Ins. Co. v. Indian Harbor Ins. Co.*,
  661 F. App'x 980 (11th Cir. 2016) ..................................................7

*Emmis Commc'ns Corp. v. Ill. Nat'l Ins. Co.*,
  323 F. Supp. 3d 1012 (S.D. Ind. 2018), *rev'd and remanded*, 929
  F.3d 441 (7th Cir. 2019), *and aff'd*, 937 F.3d 836 (7th Cir. 2019).....................16

*First Solar, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  274 A.3d 1006 (Del. 2022) ..........................................................7

*Hanover Ins. Co. v. R.W. Dunteman Co.*,
  446 F. Supp. 3d 336 (N.D. Ill. 2020), *aff'd*, 51 F.4th 779 (7th Cir.
  2022) ..................................................................................5

*Health First, Inc. v. Capitol Specialty Ins. Corp.*,
  230 F. Supp. 3d 1285 (M.D. Fla. 2017), *aff'd*, 747 F. App'x 744
  (11th Cir. 2018)......................................................................8

*Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*,
  930 F. Supp. 825 (E.D.N.Y. 1996) ................................................2

*Hovnanian Land Investment Group, LLC v. Annapolis Town Centre at
    Parole, LLC*,
  25 A.3d 967 (Md. 2011) .............................................................26

iii

*Interstate Fire & Casualty Co. v. Dimensions Assurance, Ltd.*,
  843 F.3d 133 (4th Cir. 2016). .......................................................................23

*John C. Grimberg Co., Inc. v. Nudura Corp.*,
  775 F. Supp. 3d 946 (D. Md. 2025)...............................................................22

*Liberty Mut. Fire Ins. Co. v. Sutton*,
  No. 21-1277, 2022 WL 11112589 (4th Cir. Oct. 19, 2022) ...............................3

*McWhorter v. Bankers Standard Ins. Co.*,
  611 F. Supp. 3d 3 (D. Md. 2020)......................................................................7

*Nautilus Ins. Co. v. REMAC Am., Inc.*,
  956 F. Supp. 2d 674 (D. Md. 2013).................................................................22

*Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  517 F. Supp. 3d 458 (D. Md. 2021).................................................................16

*Pinnacle Grp., LLC v. Kelly*,
  178 A.3d 581 (Md. Ct. Spec. App. 2018), *cert. denied*, 185 A.3d
  72 (Md. 2018) ...................................................................................................3

*Prince George's Cnty. v. Loc. Gov't Ins. Tr.*,
  879 A.2d 81 (Md. 2005) ....................................................................................6

*RLI Ins. Co. v. OutsideIn Architecture, LLC*,
  692 F. Supp. 3d 1077 (M.D. Fla. 2023)..........................................................10

*Rouse Co. v. Fed. Ins. Co.*,
  991 F. Supp. 460 (D. Md. 1998)......................................................................22

*RSUI Indem. Co. v. Att'y's Title Ins. Fund, Inc.*,
  No. 2:13-cv-670-FTM-38CM, 2016 WL 7042960 (M.D. Fla. June
  6, 2016) ............................................................................................................8

*Schneider v. Cont'l Cas. Co.*,
  989 F.2d. 728 (4th Cir. 1993) .........................................................................23

*SP Syntax LLC v. Fed. Ins. Co.*,
  No. 1 CA-CV 14-0638, 2016 WL 831532 (Ariz. Ct. App. Mar. 3,
  2016) .................................................................................................................8

iv

*Tapestry on Cent. Condo. Ass'n v. Liberty Ins. Underwriters Inc.*,
461 F. Supp. 3d 926 (D. Ariz. 2020) ........................................................2

*Taylor v. Sec. Nat'l Ins. Co.*,
No. 6:17-cv-2379-DCC, 2018 WL 1210563 (D.S.C. Mar. 8, 2018)............10, 11

*UBS Financial Services, Inc. of Puerto Rico v. XL Specialty Insurance Co.*,
929 F.3d 11 (1st Cir. 2019)..............................................................4

*W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*,
814 F.3d 171 (4th Cir. 2016) .................................................10, 14, 16

*W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*,
No. GJH–14–00425, 2014 WL 5812316 (D. Md. Nov. 7, 2014)......................15

*Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*,
163 Cal. App. 4th 1387 (2008) ........................................................24

**Other Authorities**

Lewis Carroll, *Through the Looking-Glass* (W.B. Conkey Co. 1900)
(1871) .....................................................................................7

Under Armour never addresses the central theory of the Underlying Matters—namely, that it devised a fraudulent scheme to conceal from investors the end of its six-year, 20% growth streak.[1]  To implement that scheme, Under Armour allegedly made false statements and used pull-forward accounting to make its accounting records align with those statements; the false statements and accounting gimmicks were inextricably intertwined.  Under Armour's conspicuous silence about its alleged 20% growth streak scheme shows it has no coherent response to the core allegations rendering the Underlying Matters a single **Claim**.

Under Armour's alternative argument, which it presents at the outset of its brief, is equally unavailing.  The 19-21 Policies do not amend the 17-18 Policies as to certain Insurers.

## ARGUMENT

I.     **The Securities Class Action, in its entirety, is a "Claim" first made before the 17-18 Policy Period.**

The 17-18 Primary Policy defines "**Claim**" to include, among other things, a "civil proceeding" that was "commenced by the service of a complaint."  JA496. The service of an amended complaint in the Securities Class Action did not "commence" a new "civil proceeding."

---

[1] This Reply Brief adopts the terms defined in the Opening Brief if not defined herein.

1

Under Armour's assertion that *Beale v. American National Lawyers Insurance Reciprocal*, 843 A.2d 78 (Md. 2004), holds to the contrary cannot withstand scrutiny. *See* Response Brief of Appellee ("Response Brief") at 62-63. The *Beale* court held that legal malpractice claims by five children consolidated into a single complaint did not arise from "related" (undefined) Professional Services. 843 A.2d at 92. The court's analysis focused on the nature of the Professional Services at issue "without regard to the number of claims made." *Id.* at 82. The court did not discuss the policy's definition of "claim," and that definition did not include a "civil proceeding" prong. *Id. Beale* is not on point, let alone "controlling."

None of the authorities cited by Under Armour involve a "Claim" definition including the "civil proceeding … commenced by the service of a complaint" prong in the 17-18 Primary Policy. *E.g.*, *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 217-18 (2d Cir. 1999) (policy did not define "claim"); *Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co.*, 95 F. Supp. 2d 180, 185 (S.D.N.Y. 2000) (policy did not specify that "claim" includes a "civil proceeding" that was "commenced by the service of a complaint"); *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 848 (E.D.N.Y. 1996) (same); *AT&T Corp. v. Faraday Cap. Ltd.*, 918 A.2d 1104, 1107 (Del. 2007) (same);

2

*Tapestry on Cent. Condo. Ass'n v. Liberty Ins. Underwriters Inc.*, 461 F. Supp. 3d 926, 933 (D. Ariz. 2020) (same).

Under Armour asserts that the Securities Class Action can be split into multiple **Claims** by treating an amended complaint as a new **Claim** under another prong of the **Claim** definition. Response Brief at 67. That contention violates two fundamental principles of contract interpretation. First, a specific provision controls over a general provision. *See Pinnacle Grp., LLC v. Kelly*, 178 A.3d 581, 593 (Md. Ct. Spec. App. 2018)*, cert. denied*, 185 A.3d 72 (Md. 2018) (table); *see also Liberty Mut. Fire Ins. Co. v. Sutton*, No. 21-1277, 2022 WL 11112589, at *3 (4th Cir. Oct. 19, 2022) (North Carolina law) (relying on the "well-settled principle" of contract law "applying specific provisions over more general ones dealing with the same subject matter"). Second, courts avoid interpretations that would render any contract provision superfluous. *See Pinnacle Grp.*, 178 A.3d at 594. Here, the "civil proceeding" prong of the **Claim** definition is more specific than the "written demand for monetary damages or other relief" prong or the "civil … investigation" prong and therefore must control. JA496. The "civil proceeding" prong would be rendered surplusage if, as Under Armour contends, the "written demand" prong is read to apply to an amended complaint. Instead, the natural reading of the provisions together is that the "written demand for monetary

3

damages or other relief" prong applies to written demands that do not commence a civil proceeding.

Under Armour's assertion that the Allocation Provision, Other Insurance Provision, and Specific Matter Exclusion contemplate that a single civil proceeding may be broken into multiple **Claims** makes no sense. *See* Response Brief at 68. Those provisions merely recognize that a **Claim** may sometimes result in both covered **Loss** and uncovered loss; they do not address what constitutes a **Claim** or when a **Claim** is first made.

The First Circuit rejected the arguments Under Armour makes here in *UBS Financial Services, Inc. of Puerto Rico v. XL Specialty Insurance Co.,* 929 F.3d 11, 24 (1st Cir. 2019). There, the insured argued that portions of a lawsuit constituted separate "written notice[s]" under the first subpart of the policy's "claim" definition. *Id.* at 23. The First Circuit held that "a single subpart defining a 'claim' as a 'written notice'" does not govern over the more pertinent subpart defining "claim" as a "civil proceeding." *Id.* at 24. Otherwise, the different subparts "would be rendered superfluous." *Id.* The First Circuit also rejected the insured's argument under the policy's allocation provision, holding that the "claim" definition governs the scope of the "claim." *Id.*

What happened in the Securities Class Action is what typically happens in a lawsuit. The initial Breece Complaint asserted a **Claim**. Later, as more evidence

4

became available, plaintiffs filed amended complaints with additional allegations. As plaintiffs aptly put it, "the newly discovered evidence establishes that, in order to meet Plank's aggressive, 'revenue-growth-at-all costs' sales targets …, 'mask slowing demand in 2016 for the company's athletic apparel,' and extend the 26-consecutive quarter 20% year-over-year growth streak Plank regularly touted …, the Company engaged in deceptive, unsustainable accounting and sales practices that pulled sales forward from future quarters."  SCA, ECF No. 106-2 at 17. Identifying new evidence about the same scheme in amended pleadings does not render those amended pleadings new **Claims**.  *See Hanover Ins. Co. v. R.W. Dunteman Co.,* 446 F. Supp. 3d 336, 345 (N.D. Ill. 2020), *aff'd*, 51 F.4th 779 (7th Cir. 2022) ("[A] Claim here is defined as a 'civil proceeding commenced by service of a complaint' … [b]ecause a civil proceeding can only be commenced once, a new Claim did not arise with the filing of the [amended complaint]," regardless of whether the amended complaint "alleged new Wrongful Acts.").

II.    **The Underlying Matters are deemed a single Claim first made before the 17-18 Policy Period.**

Under Armour contends that the Government Investigations, later Derivative Matters, and portions of the TAC are a separate **Claim** unrelated to the other Underlying Matters because they focus on accounting pull-forwards whereas the other Underlying Matters focus on alleged misrepresentations concerning Under Armour's financial condition.  This ignores the Underlying Matters' common

central theory: Under Armour engaged in an ongoing, fraudulent scheme to misrepresent to the investing public that its 20% growth streak was continuing. The shared central theme to induce the public to invest in Under Armour stock renders the Underlying Matters a single **Claim** under the Endorsement 4 Single Claims Provision and the Base Form Single Claims Provision.

### A. Under Armour's contention that the Endorsement 4 Single Claims Provision replaced the Base Form Single Claims Provision is wrong and a red herring.

1.    Under Armour relies on cases holding that an endorsement supersedes a provision in the base form *where the endorsement is inconsistent* with that provision.  *See* Response Brief at 41.  Those cases are inapplicable here because the Base Form Single Claims Provision and the Endorsement 4 Single Claims Provision are consistent; they can be read harmoniously by deeming **Claims** falling within either formulation to be a single **Claim**.  Opening Brief at 33-34.  *See Prince George's Cnty. v. Loc. Gov't Ins. Tr.*, 879 A.2d 81, 88 (Md. 2005) ("In general, the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made to construe them harmoniously.").

None of the cases on which Under Armour relies involved an endorsement specifying that the provision at issue was "in addition to" the base form provision. If the Endorsement 4 Single Claims Provision were intended to "replace" the Base Form Single Claims Provision, then Endorsement 4 would say so.  In fact,

Endorsement 4 specifies no less than 34 times that other provisions in Endorsement 4 "*replaced*" provisions in the base form.  JA491-492 (emphasis added).  At bottom, Under Armour argues that the Court should read "in addition to" to mean "replaced" in an endorsement that says "replaced" when it means "replaced."  That, of course, is Alice in Wonderland "[a word] means just what I choose it to mean" nonsense.  *See* Lewis Carroll, *Through the Looking-Glass* 95 (W.B. Conkey Co. 1900) (1871); *see also McWhorter v. Bankers Standard Ins. Co.*, 611 F. Supp. 3d 3, 22 (D. Md. 2020) (holding "[t]he word 'added' [in an endorsement] makes it unambiguous that the Policy does not remove or replace the existing … exclusion, it simply *adds* additional exclusions." (emphasis added)).

Under Armour's argument that the Specific Matter Exclusion supersedes the Single Claims Provision fares no better.  *See* Response Brief at 39.  The two provisions serve independent and distinct purposes: the Single Claims Provision determines whether **Claims** are related and deemed a single **Claim**; in contrast, the Specific Matter Exclusion excludes coverage for **Loss** on account of any **Claim** resulting from specified matters "or any **Wrongful Act** or **Interrelated Wrongful Act** alleged therein."  JA466; JA491; JA484.  *See, e.g.*, *First Solar, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 274 A.3d 1006, 1018 (Del. 2022) (affirming that the "Relation Back Provision"— not the "Specific Matter Exclusion"—

governed whether an opt-out action was deemed first made before the policy period).[2]

The Specific Matter Exclusion does not replace or alter the definition of **Interrelated Wrongful Acts** outside the Specific Matter Exclusion. *See* JA485 ("This endorsement does not change any other provision of the Policy."); *see also Health First, Inc. v. Capitol Specialty Ins. Corp.,* 230 F. Supp. 3d 1285, 1298 (M.D. Fla. 2017), *aff'd*, 747 F. App'x 744 (11th Cir. 2018) (language in prior/pending litigation exclusions stating "[a]ll other terms, conditions and limitations of this Policy shall remain unchanged . . . demonstrates that the related claims provision in each policy is unaffected by the respective endorsement and still applies."). If the Specific Matter Exclusion were intended to amend or replace the **Interrelated Wrongful Acts** definition in the base policy form, it would say so, like every other endorsement that amends a definition in the base form. *E.g.,*

---

[2] *See also, e.g., Direct Gen. Ins. Co. v. Indian Harbor Ins. Co.*, 661 F. App'x 980, 985 (11th Cir. 2016) (finding "Related Claims" provision was neither ambiguous nor "inconsistent with … the Pending and Prior Litigation Endorsement Clause and the Notice provision"); *RSUI Indem. Co. v. Att'y's Title Ins. Fund, Inc.,* No. 2:13-cv-670-FTM-38CM, 2016 WL 7042960, at *5 (M.D. Fla. June 6, 2016) ("[T]here is no conflict between the Related Claims Condition and the Prior and Pending Litigation Exclusion . . . [A] claim . . . could escape the Prior and Pending Litigation Exclusion yet fall within the Related Claims Condition. This alone illustrates their separate and distinct purposes, and how they work in harmony."); *SP Syntax LLC v. Fed. Ins. Co.*, No. 1 CA-CV 14-0638, 2016 WL 831532, at *9 (Ariz. Ct. App. Mar. 3, 2016) (finding prior or pending claim exclusion and related claims provision "do not conflict, [but rather] are dealing with two different types of conditions").

JA483 ("Section II. DEFINITIONS of the Directors and Officers Liability Coverage Section – Public Company is amended as follows:"); JA515 (same); JA516 (same); JA488 ("Section II. GENERAL DEFINITIONS is amended as follows:"); JA509 (same); JA507 ("Section II. DEFINITIONS is amended as follows:"); JA512 ("The following Definition is added:"); JA513 ("Definition II.H. Retired Independent Director is replaced with the following:").

2.    More fundamentally, it does not matter whether the Endorsement 4 Single Claims Provision replaced the Base Form Single Claims Provision because the two provisions are equally broad and produce the same result.

Under Armour contends that the Endorsement 4 Single Claims Provision is narrower than the Base Form Single Claims Provision based on a misleading distinction between policy provisions using "the" versus "any." See Response Brief at 40. In particular, Under Armour relies on cases using "the" with no additional language, such as "in the county in which the Credit Union is located" in Brown v. Emery Federal Credit Union, No. DLB-21-591, 2022 WL 991387 (D. Md. Mar. 31, 2022). *Id.* In that instance, "the" could be reasonably construed to limit the provision to a particular Credit Union. But that rationale does not apply here. The Endorsement 4 Single Claims Provision extends not only to Claims arising out of "the same fact, circumstance, situation, event, or Wrongful Act" but also Claims arising out of "facts, circumstances, situations, events or Wrongful

9

Acts that are logically or causally related." JA491. Thus, in context, the use of "the" cannot reasonably be read to limit the provision as Under Armour argues; on its face, Endorsement 4 extends far beyond "the" same facts (etc.) to include all "logically or causally related" facts (etc.). *Id.*

Under Armour does not cite a single case drawing its argued-for distinction between related claims provisions using "the" and those using "any." In fact, as demonstrated in the Insurers' Opening Brief, abundant case law holds that the relatedness standards in the Base Form Single Claims Provision and the Endorsement 4 Single Claims Provision are closely comparable, exceedingly broad, and often applied interchangeably. Opening Brief at 34; *see, e.g.*, W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co., 814 F.3d 171, 176-77 (4th Cir. 2016) (claims were related because they shared a "common nexus" of fact where policy provision used "logically or causally connected" standard); Cont'l Cas. Co. v. AWP U.S., Inc., No. 3:19cv661, 2021 WL 1225968, at *37 (E.D. Va. Mar. 31, 2021) (same); RLI Ins. Co. v. OutsideIn Architecture, LLC, 692 F. Supp. 3d 1077, 1100 (M.D. Fla. 2023) (applying "sufficient factual nexus" test when policy provision used "logically or causally connected" standard).[3]

---

[3] While it does not affect the outcome, Under Armour's assertion that the Single Claims Provision is an exclusion is also wrong. Related claim provisions like the Single Claims Provision are neutral, sometimes benefitting the insured (*e.g.*, by allowing coverage for a related claim made after the end of the policy period or by limiting the insured's deductible to a single per claim amount) and sometimes

**B. The Underlying Matters all arise out of the same alleged fraudulent scheme and are, therefore, deemed a single Claim first made before the 17-18 Policy Period.**

1. Under Armour asserts that the Government Investigations focused on "pull forwards" whereas the Breece Complaint focused on false and overly optimistic statements about Under Armour's financial condition, including revenue projections and growth rates. Response Brief at 45-52. On that basis, Under Armour argues that the Government Investigations, the portion of the TAC addressing pull forwards, and the later Derivative Matters are separate, unrelated **Claims**.

Under Armour misses the forest for the trees by relying on evidentiary details to mask the intimate and direct connection among the Underlying Matters. The Underlying Matters all arose out of the same **Wrongful Act** – *i.e.*, Under Armour's allegedly false and misleading statements to the investing public about its finances and 20% growth streak:

- The initial Derivative Matters arose out of Under Armour's misrepresentations about its "financial outlook," including that its growth streak would continue in 2016 with a net revenue

---

benefitting the insurer (*e.g.*, by deeming a claim made before the policy period). *See Taylor v. Sec. Nat'l Ins. Co.*, No. 6:17-cv-2379-DCC, 2018 WL 1210563, at *6 n.2 (D.S.C. Mar. 8, 2018) (declining to treat Interrelated Wrongful Acts provision as an exclusion); *ADI Worldlink, LLC v. RSUI Indem. Co.*, No. 4:16-cv-665-ALM-CAN, 2017 WL 6403047, at *14 (E.D. Tex. Aug. 16, 2017) (holding it "would defy reason" to treat the Interrelated Condition as an exclusion). Accordingly, "the rule of narrow or strict construction related to exclusions [is] inapplicable" to the Single Claims Provision. *Taylor*, 2018 WL 1210563, at *6 n.2.

11

growth of 25%. JA832-834; *see also* JA374; JA819-820.

- The Breece Complaint arose out of Under Armour's misrepresentations "that the Company would maintain its trend of greater than 20% sales growth," which did not have "any basis in fact and were false when made." JA28.

-

  *See* JA1162-1164.

- The TAC arose out of Under Armour's misrepresentations that "trumpeted explosive [20%] growth and strong customer demand, while downplaying and concealing the Company's suspect sales practices, declining brand heat, ballooning inventory, liquidations, and gross margin compression." JA179.

- The SEC Order arose out of Under Armour's materially false and misleading statements about its "revenue growth rate and the factors contributing to the revenue growth rate" in many of the same 2016 earnings reports at issue in the Breece Complaint. *See* JA1096, JA1099-1100; JA30-34. According to the SEC, Under Armour's public statements were materially misleading because they repeatedly "highlighted" Under Armour's 20% growth streak, without disclosing the use of pull forwards to meet those targets. JA1096.

- The later Derivative Matters similarly arose out of Under Armour's misrepresentations about its revenue and 20% growth streak. *See* JA927; JA841-842, JA869-870.

At their core, the Underlying Matters allege that Under Armour made the same false and misleading statements as part of its "scheme to mask slowing demand between late 2015 and early 2017 and its unsuccessful attempt to conceal

12

that the Company's 20-plus quarter streak of at least 20% net revenue growth had come to an end." *See* SCA, ECF No. 131-1 at 5. Under Armour employed the accounting gimmicks to maintain the false impression that its 20% growth streak was continuing.

Tellingly, the SEC did not conclude that Under Armour committed a **Wrongful Act** simply because Under Armour used pull forwards. Nor could it, as using pull forwards is not inherently wrongful. *See In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1381 (N.D. Cal. 1995) ("[W]hile they may be emblematic of American business' habitual tendency toward short-term views, 'pull-ins' are not the nefariously manipulative scheme that plaintiffs make them out to be. 'Pull-ins' do not result in the improper recognition of revenue under [GAAP]. They are actual sales which are treated no differently than any other sale."). Rather, the SEC determined that Under Armour committed a **Wrongful Act** by making materially misleading "statements regarding its revenue growth rate and the factors contributing to its revenue growth rate." JA1096. Those statements were "materially misleading" because Under Armour "fail[ed] to disclose the impact of its pull forward practice on revenue growth." *Id.* In other

13

words, Under Armour used inadequately disclosed pull forwards to support its false statements about its 20% growth rate.[4]

2.    Under Armour largely ignores the vast body of law in this Circuit and elsewhere holding that similar policy language broadly encompasses claims having far fewer commonalities than the Underlying Matters, relegating most of the on-point cases to footnotes.  *See* Response Brief at 59-60, nn. 22-24.

Under Armour attempts to distinguish *W.C. & A.N. Miller Development* by positing that it involved a "broader" relatedness standard.  *See* Response Brief at 57.  But that case involved the same "logical or causal" relationship standard as the Endorsement 4 Single Claims Provision that Under Armour contends applies. *Compare W.C. & A.N. Miller Dev. Co.*, 814 F.3d at 175 (deeming Claims related if they involve "Wrongful Acts which are logically or causally connected"), *with* JA491 (deeming **Claims** related if they arise out of "**Wrongful Acts** that are logically or causally related").  And in explaining its holding, this Court held that the claims in question shared a "common nexus," the language in the Base Form Single Claims Provision, demonstrating how courts treat the two standards

---

[4] Under Armour has it backwards when it asserts that the false statements were not a but for cause of the pull-forward transactions.  *See* Response Brief at 52.  The pull-forward transactions were needed to support the false statements.  Likewise, it does not matter that the alleged timing of the pull-forward transactions and the false statements is not identical.  *See id.* at 49.  Under Armour used its accounting records from January 2015 (███████████████████████) to support its false statements to investors in September 2015 (which the Breece Complaint alleged).

interchangeably. *See W.C. & A.N. Miller Dev. Co.*, 814 F.3d at 177 (holding lawsuits shared a "common nexus" because they alleged a "common scheme"); JA466, JA464 (deeming **Claims** related if they arise out of "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes"). Neither this Court nor the District Court treated the word "any" in the relatedness standard as having any significance to its analysis. The bottom line is that under either the Base Form Single Claims Provision or the Endorsement 4 Single Claims Provision, "differences . . . between the [claims] . . . are irrelevant to the ultimate question of whether the actions involve 'Interrelated Wrongful Acts.'" *W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*, No. GJH–14–00425, 2014 WL 5812316, at *7 (D. Md. Nov. 7, 2014).

This case is not analogous to the cases Under Armour cites where the only commonality between claims was historical context or the insureds' general business practices. *See, e.g.*, *ACE Am. Ins. Co. v. Ascend One Corp.,* 570 F. Supp. 2d 789, 800 (D. Md. 2008) (holding claims involving insured's general "business practices" did not share a "common nexus" because to hold otherwise would preclude coverage for "any claim against [the insured] based on how it provides business services"); *Cont'l Cas. Co.*, 2021 WL 1225968, at *15 (E.D. Va. Mar. 31, 2021) (holding indemnification claims were not Related or Interrelated Claims

15

where "the only commonality among the [claims] is one of Allianz's general business practices as opposed to, for example, the same underlying facts, misstatements, transactions, or events"); *Benefytt Techs. v. Cap. Spec. Ins. Corp.*, No. N21C-02-143 PRW CCLD, 2025 WL 84701, at *12 (Del. Super. Ct. Jan. 6, 2025) (unpublished) (finding it "insufficient" to "rel[y] on the introduction and background of the various complaints to make bald allegations of interrelatedness"); *AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*, C.A. No. 21-374-JLH , 2022 WL 980299, at *6 (D. Del. Mar. 31, 2022) (holding prior notice exclusion did not bar coverage for securities class action and SEC investigation because the record "d[id] not suggest a meaningful linkage between the accounting issues identified in [the various claims], much less that they arose from a single fraudulent scheme"); *Emmis Commc'ns Corp. v. Ill. Nat'l Ins. Co.*, 323 F. Supp. 3d 1012, 1029 (S.D. Ind. 2018), *rev'd and remanded*, 929 F.3d 441 (7th Cir. 2019), *and aff'd*, 937 F.3d 836 (7th Cir. 2019) (holding lawsuits did not allege Interrelated Wrongful Acts where the "only connection" was "the historical context of the relationship between [the insured] and its shareholders"); *see also Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 517 F. Supp. 3d 458, 462 (D. Md. 2021) (distinguishing *W.C. & A.N. Miller Development* and other cases that involved a "common scheme").

16

This case does not involve some vague overarching motive, like "increasing profits." To the contrary, the Underlying Matters all allege an ongoing singular scheme to conceal the end of Under Armour's 20% growth streak from the investing public. The logical and causal relationship between the false statements and the accounting gimmicks is manifest – the accounting gimmicks were necessary to align the financial records with the false statements. *See W. C. & A.N. Miller Dev. Co.,* 814 F.3d at 177 (holding lawsuits were "logically and causally connect[ed]" because they involved the same "alleged scheme involving the same claimant, the same fee commission, the same contract, and the same real estate transaction"); *Bryan Bros. Inc. v. Cont'l Cas. Co.,* 704 F. Supp. 2d 537, 543 (E.D. Va. 2010), *aff'd*, 660 F.3d 827 (4th Cir. 2011) (holding claims were related because they "involved the *same* scheme to defraud [the insured's] clients"); *Cont'l Cas. Co. v. Jones*, No. 3:09-cv-1004-JFA, 2011 WL 3880963 (D.S.C. Sept. 2, 2011), *amended on other grounds on reconsideration as stated in* 2012 WL 530002, at *7 & n.3 (D.S.C. Feb. 17, 2012) (holding claims were "logically or causally connected" because "they all arose out of [the insured's] scheme to defraud his clients of money and to cover his tracks").

Because the Underlying Matters arose out of the same **Wrongful Act** (*i.e.*, Under Armour's materially false and misleading statements to the public), or at minimum, "**Wrongful Acts** that have as a common nexus any fact, circumstance,

17

situation, event, transaction, cause" or "facts, circumstances, situations, events, or **Wrongful Acts** that are logically or causally related" (*i.e.*, Under Armour's fraudulent scheme to conceal its true financial condition and growth rate), the Underlying Matters are deemed a single **Claim** first made before the 17-18 Policy Period.

### III. The Specific Matter Exclusion and Prior Notices Exclusion each separately bars coverage for the Underlying Matters.

The Specific Matter Exclusion bars coverage for the Securities Class Action because the TAC necessarily "result[s] from" the Breece Complaint (identified in the exclusion), given that the TAC is merely the newest iteration of that complaint. Similarly, the Consolidated Kenney Action, in which Shawn Luger is a named plaintiff, "result[s] from" the Luger Derivative Demand (also identified in the exclusion). The other Derivative Matters and Government Investigations are barred by the Specific Matter Exclusion because, as discussed above, they each result from matters specifically identified in the Specific Matter Exclusion, or from any **Wrongful Act** or **Interrelated Wrongful Act** alleged therein. The "that portion of" language in the Specific Matter Exclusion is immaterial here because there is no "portion of **Loss**" in the Underlying Matters that is not attributable to

18

the same fraudulent scheme alleged in the Breece Complaint and/or the Sorensen and Luger Derivative Demands.[5]

The Prior Notice Exclusion also bars coverage. The Securities Class Action, including the TAC, arises out of the facts, circumstances, or situations that were the subject of Under Armour's notice to the 16-17 Insurers of the Breece Complaint during the 16-17 Policy Period.

Similarly, the Government Investigations and the Derivative Matters are based upon, arise out of, or are attributable to the facts, circumstances or situations that were the subject of Under Armour's notices to the 16-17 Insurers during the 16-17 Policy Period, including the Breece Complaint and the Sorensen and Luger demands.

Under Armour's focus on whether some of these matters were accepted by the 16-17 Insurers as "claims" under the 16-17 Policies, rather than notice of circumstances, puts form over substance. *See* Response Brief at 70. The 17-18 Policies do not cover **Claims** arising out of matters noticed to and accepted by the 16-17 Insurers as timely. Regardless of whether the 16-17 Insurers treated those prior matters as a notice of circumstance or a **Claim**, subsequent related **Claims** are deemed a single **Claim** first made before the 17-18 Policy Period.

---

[5] Under Armour's argument about the Allocation Provision is likewise irrelevant. *See* Response Brief at 44. No portion of the Underlying Matters is covered under the 17-18 Policies, and thus there is no need for any allocation.

IV.    **Under Armour's alternative argument under the 19-21 Policies is meritless.**

Under Armour's alternative argument under the 19-21 Policies misconstrues the language and operation of the Specific Investigation Exclusion ("SIE"). Under Armour attempts to recast the SIE as a binding "final" agreement by insurers on the 19-21 tower to deem the Government Investigations and related matters **Claims** covered under the 17-18 Policies. Neither the law nor logic supports Under Armour's position.

### A. The SIE does not deem the Government Investigations a Claim made during the 17-18 Policy Period.

Under Armour's reading of the SIE is at odds with its plain language, which does not deem the Government Investigations to be made during the 17-18 Policy Period. The SIE has two distinct parts:

First, the SIE excludes coverage under the 19-21 Policies, in relevant part, for **Loss** arising from the "SEC Investigation" and "DOJ Investigation," including all related subpoenas, Wells Notices, and enforcement proceedings, and any matters involving any Wrongful Act, **Interrelated Wrongful Acts** or the subject matter of the SEC Investigation and the DOJ Investigation. JA1467.

Second, the SIE addresses how additional, *new* **Claims** related to the SEC Investigation and DOJ Investigation will be treated: "in the event a **Claim** is excluded pursuant to this endorsement *and such* **Claim** *was made during the* [19-

20

21] *Policy Period* . . . then such **Claim** will be deemed to have been (i) made during the 2017-2018 UA D&O Tower; and (ii) noticed to the Insurer pursuant to and in satisfaction of [the notice requirements] of the Sompo 2017-18 primary policy." JA1467-1468 (emphasis added).

The Government Investigations are expressly excluded by the SIE—and those investigations were not new **Claims** "made during" the 19-21 Policy Period. Accordingly, the SIE does not operate to deem the Government Investigations as made during the 17-18 Policy Period. Under Armour's attempt to characterize ███████████████████████████████████ as new Claims made during the 19-21 Policy Period is unavailing. ███████████████████████ ████████████████████████████ are subsumed within the SIE's defined terms "SEC Investigation" and "DOJ Investigation" and therefore cannot constitute new **Claims** made during the 19-21 Policy Period. JA1467.

### B. Claims that the SIE deems made in the 17-18 Policy Period remain subject to all 17-18 Primary Policy terms.

Even if there were new **Claims** made during the 19-21 Policy Period that might be "deemed made" during the 17-18 Policy Period, the SIE states that such **Claims** remain "subject to _all_ terms, conditions, limitations and exclusions of the [17-18 Primary Policy]." JA1468 (emphasis added). Under Armour's arguments to the contrary fail.

21

First, Under Armour erroneously insists that it would be inconsistent for the SIE to "deem" claims as made in the 17-18 Primary Policy, only for the Single Claims Provision then to deem such **Claims** first made in an earlier policy period. Under Armour's argument would require the Court to rewrite the SIE to:

- Replace the existing provision stating that certain new **Claims** will be "deemed to have been made during the 2017-2018 UA D&O tower" with a provision that states such claims will be "*finally* deemed to have been *first* made during" the 17-18 Policy Period. JA1468.

- Replace the existing provision stating that new **Claims** falling within the SIE are "subject to all terms, conditions, limitations and exclusions" of the 17-18 Policies with a provision stating that such Claims "are subject to the 17-18 Primary Policy's terms, conditions, limitations and exclusions *except the Single Claims Provision and the 'first' made provision.*" JA1468.

Maryland law precludes this rewriting. "It is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." *John C. Grimberg Co., Inc. v. Nudura Corp.*, 775 F. Supp. 3d 946, 956 (D. Md. 2025). *See also Cordish Companies, Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 995 (D. Md. 2021) ("'If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said' . . . 'a court has no alternative but to enforce those terms.'"), *quoting Megonnell v. United Servs. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002); *and see Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 199 (D. Md. 2019) (unambiguous policy language "must be enforced as written"), *quoting*

22

*Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995).

Second, Under Armour's argument asks this court to consider extrinsic evidence – the SIE – to interpret the 17-18 Primary Policy, which is impermissible under Maryland law.  *See, e.g., Nautilus Ins. Co. v. REMAC Am., Inc.,* 956 F. Supp. 2d 674, 686 (D. Md. 2013) ("In Maryland, extrinsic evidence is not admissible to interpret an insurance policy that is unambiguous on its face."); *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 465 (D. Md. 1998) ("If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said and will not resort to extrinsic evidence to ascertain the contract's meaning.").

Because the SIE is part of the 19-21 Primary Policy, not the 17-18 Primary Policy, Under Armour's reliance on *Interstate Fire & Casualty Co. v. Dimensions Assurance, Ltd.* is misplaced.  843 F.3d 133, 137 (4th Cir. 2016).  In *Dimensions*, this Court held that an insurance policy should be interpreted as a whole, "giv[ing] effect to each clause" to avoid rendering any term "surplusage." *Id.*  Here, interpreting the 17-18 Primary Policy as a whole and giving effect to each clause of that policy necessarily *precludes* consideration of the SIE, which is not part of that contract.  As recognized in *Dimensions*, courts applying Maryland law "may not look to extrinsic sources to create an ambiguity."  843 F.3d at 138.  *See also Schneider v. Cont'l Cas. Co.*, 989 F.2d. 728,731 (4th Cir. 1993) (where contractual

23

language is clear, court may not "invite or accept the submission of extrinsic evidence, 'find' ambiguity . . . based upon that evidence, and resolve the found ambiguity by resort to that extrinsic evidence.").  But that is exactly what Under Armour asks this Court to do.  The SIE, a provision that is part of a *different* policy, issued for a *different* policy period and followed by excess policies issued by a *different* group of excess insurers—cannot negate the 17-18 Primary Policy's unambiguous Single Claims Provision.

Third, Under Armour ignores that the SIE and the Single Claims Provision are not in conflict and can be harmonized easily when read together.  The SIE states that newly made **Claims** excluded by the SIE will be "deemed made" during the 17-18 Policy Period.  But the 17-18 Primary Policy covers only those "***Claims first made***" against **Insureds** during the Policy Period.  JA474; JA510-511 (emphasis added).  In turn, the Single Claims Provision states that all **Claims** arising out of the same or **Interrelated Wrongful Acts** "shall be deemed to be *first made* on the date the earliest of such **Claims** is *first made* against any **Insured** regardless of whether such date is before or during the **Policy Period**."  JA466 (emphasis added).

As such, even where the SIE "deems" a **Claim** as "made during" the 17-18 Policy Period, coverage still depends on whether that **Claim** also is "first made" during the 17-18 Policy Period.  As one court explained, references in an insurance

24

policy "to claims '*first* made' . . . suggest that the same claim can be made more than once. This suggests that two events each constituting a claim under the policy definition, such as 'a written demand for civil damages or other relief' followed by 'a civil proceeding commenced by the service of a complaint or similar pleading,' can constitute a single claim made more than once." *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1394–95 (2008). In short, a **Claim** could be "deemed made" during the 17-18 Policy Period by the SIE while also being "deemed first made" in an earlier policy period pursuant to the 17-18 Primary Policy's Single Claims Provision. Under Armour cannot negate the 17-18 Primary Policy's insuring agreement's "first" made condition.[6]

Fourth, a reading of the SIE as deleting the 17-18 Primary Policy's Single Claims Provision and "first" made condition is inconsistent with that policy, which states:

> No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized representative of the Insurer.

---

[6] Moreover, the Single Claims Provision does not operate solely to deem claims into an earlier policy period. The Single Claims Provision also aggregates multiple related **Claims** made during the 17-18 Policy Period into one **Claim** subject to one retention. If, as Under Armour urges, the SIE eliminates the 17-18 Primary Policy's Single Claims Provision, then each new **Claim** deemed into the 17-18 Policy Period would be subject to separate $3.5 million per **Claim** retentions. JA466; JA491.

25

JA472.  Each of the Excess Policies follows form to this requirement.  The Excess

Policies also each contain provisions requiring that any change to the 17-18

Primary Policy be specifically agreed to by those insurers or confirmed in writing.

JA554 (CNA); JA573 (NASIC); JA584 (National Union); JA601 (Freedom);

JA611 (QBE); JA626 (Argo); JA662 (XL); JA688 (Allied World); JA695

(Navigators).  Had the Insurers intended to modify the 17-18 Policies, they would

have done so by endorsement to *those* Policies (not other policies).[7]

Under Armour insists that Maryland law permits parties to waive a

requirement that a contractual change be in writing, *see Hovnanian Land*

*Investment Group, LLC v. Annapolis Town Centre at Parole, LLC*, 25 A.3d 967,

978 (Md. 2011), and that "an earlier agreement may be modified by a later one, by

mutual consent."  *See Allstate Ins. Co. v. Stinebaugh*, 824 A.2d 87, 99 (Md. 2003).[8]

---

[7] There was no "coverage-in-place" agreement between the parties, and Under Armour does not assert otherwise.

[8] In *Hovnanian*, the Maryland Supreme Court remanded for the trier of fact to determine whether Hovnanian's conduct evinced intent to modify or waive a condition precedent.  25 A.3d at 979, 987.  Here, the writing requirement is not a condition precedent.  Moreover, after issuance of the 19-21 Primary Policy and the SIE, Endurance's conduct was wholly *inconsistent* with an intent to waive operative provisions in the 17-18 Primary Policy: (i) it paid its 17-18 policy limits while reserving the right to recoup, (ii) it asserted it was entitled to recoup the payment after determining that the Government Investigations and "all of the matters for which coverage previously sought" were Claims made *prior* to the 17-18 Policy Period; and (iii) it filed this lawsuit seeking recoupment.  JA1307-1322; JA1-9; JA1336; JA1359-1361.  *Hovnanian*, therefore, is inapposite.

26

But this argument misses the mark because the SIE does not purport to modify the 17-18 Primary Policy.  In fact, the SIE specifically states that **Claims** deemed to be made during the 17-18 Policy Period remain "subject to _all_ terms, conditions, limitations and exclusions of the [17-18 Primary Policy]."  JA1468 (emphasis added).  Simply put, the Insurers and Under Armour never agreed to amend or modify the 17-18 Primary Policy, either by endorsement to that policy or in the SIE.

Finally, as discussed *supra* at § III, the Specific Matter Exclusion and Prior Notice Exclusion separately and independently bar coverage for the Underlying Matters.  Under Armour does not even attempt to argue that the SIE's "deemed made" provision displaces these exclusions.

## CONCLUSION

This Court should reverse the District Court's judgment.  Under Armour cannot tap a second tower of coverage for the Underlying Matters under the 17-18 Policies' plain language.

27

July 25, 2025

/s/ *Michael P. O'Day*
Michael P. O'Day
Alexa Pauline Ain
DLA PIPER LLP (US)
650 S. Exeter Street
Suite 1100
Baltimore, MD 21202
(410) 580-3000

*Counsel for Plaintiff-Appellant*
*National Union Fire Insurance*
*Company of Pittsburgh, PA*

/s/ *John R. Solter, Jr.*
John R. Solter, Jr.
AZRAEL, FRANZ, SCHWAB,
LIPOWITZ & SOLTER, LLC
101 East Chesapeake Avenue
Fifth Floor
Baltimore, MD 21286
(410) 821-6800

Darius N. Kandawalla
Jordan W. Ziolkowski
BAILEY CAVALIERI LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215
(614) 229-3257

*Counsel for Plaintiff-Appellant*
*Freedom Specialty Insurance Company*

Respectfully submitted,

/s/ *Richard A. Simpson*
Richard A. Simpson
Margaret T. Karchmer
Anna J. Schaffner
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff-Appellant*
*Continental Casualty Company*

/s/ *John R. Solter, Jr.*
John R. Solter, Jr.
AZRAEL, FRANZ, SCHWAB,
LIPOWITZ & SOLTER, LLC
101 East Chesapeake Avenue
Fifth Floor
Baltimore, MD 21286
(410) 821-6800

Paul T. Curley
Briana Semenza
KAUFMAN BORGEEST & RYAN
LLP
200 Summit Lake Drive
Valhalla, NY 10595
(914) 449-1019

*Counsel for Plaintiff-Appellant Swiss*
*Re Corporate Solutions America*
*Insurance Corporation*

28

/s/ *Gabriela Richeimer*
Gabriela Richeimer
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue NW
Suite 200
Washington, DC 20037
(202) 599-1092

*Counsel for Plaintiff-Appellant XL
Specialty Insurance Company*

/s/ *Leslie S. Ahari*
Leslie S. Ahari
Stacey E. Rufe
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue NW
Suite 200
Washington, DC 20037
(202) 599-1013

*Counsel for Plaintiff-Appellant QBE
Insurance Company*

/s/ *Travis Wall*
Travis Wall
Gordon Smith
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
(415) 323-4487

*Counsel for Plaintiff-Appellant Allied
World National Assurance Company*

/s/ *John J. Murphy, Esq.*
John J. Murphy, Esq.
WALKER, MURPHY & NELSON,
LLP
9210 Corporate Boulevard
Suite 320
Rockville, MD 20850
(301) 519-9150

*Counsel for Plaintiff-Appellant
Navigators Insurance Company*

/s/ *John J. Murphy, Esq.*
John J. Murphy, Esq.
WALKER, MURPHY & NELSON,
LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
(301) 519-9150

Geoffrey W. Heineman, Esq.
John J. Iacobucci Jr., Esq.
ROPERS MAJESKI PC
800 Third Avenue, 29th Floor
New York, New York 10022
(212) 668-5927

*Counsel for Plaintiff-Appellant
Argonaut Insurance Company*

29

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains 6,500 words.

   [ ] this brief uses a monospaced type and contains [state the number of] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 365] in [14pt Times New Roman]; or

   [ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

July 25, 2025                                    /s/ *Richard A. Simpson*
                                                 Richard A. Simpson

30

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I caused a true and correct copy of the Public and Sealed Reply Brief of the Plaintiffs-Appellants to be filed with the clerk of the U.S. Court of Appeals via the appellate CM/ECF system, which will send notice of the filing to all participants in this case including counsel for the Appellee.

I further certify that on July 25, 2025, I caused a copy of the Sealed Reply Brief of the Plaintiffs-Appellants to be served, via email, upon counsel for the Appellee, at the following address:

Jonathan G. Hardin
Michael T. Sharkey
Molly A. Olds
PERKINS COIE LLP
700 13th Street, N.W., Suite 800
Washington, D.C. 20005-3960
(202) 654-6297
JHardin@perkinscoie.com
MSharkey@perkinscoie.com
MOlds@perkinscoie.com
*Attorneys for Under Armour, Inc.*

/s/ *Richard A. Simpson*
Richard A. Simpson

31